SARAH H. LUCE, Appellant, *v.* MARY DUNHAM, et al., Respondents.

A provision in a will directing generally that the personal property of the testator shall be distributed, as provided by statute in case of intestacy, where the testator leaves a widow, will entitle her to be included in the distribution, although not specially mentioned; but where the distribution is by the terms of the will confined to the next of kin, the reference to the statute simply gives the rule of distribution among the next of kin, as if there were no widow, and she is not included.

The will of D., after a devise of certain real estate to his wife, and a bequest to her of $100,000, also bequests to four sisters, contained this residuary clause, " All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise and bequeath, and do devise and will that the same shall be divided among my heirs and next of kin, in the same manner as it would be by the laws of the State of New York, had I died intestate." The testator, at the time of the execution of the will, and at the time of his death, had no other real estate save that devised to his wife. Upon settlement of the estate, the widow claimed a share

in the residuary estate.  *Held,* that the word "heirs" in said clause, was used simply in reference to real estate, and the fact that the testator owned no real estate save that specifically devised, did not show an intent to apply it to the personalty ; that the words "next of kin" did not include the widow ; and that the addition of the words referring to the statute, in case of intestacy, did not enlarge the class of legatees so as to include her.

The personal property of the testator consisted principally of ships and vessels.  The testator directed that his executors should not be compelled to sell his ships, etc., or to pay the legacies until, in their judgment, the best interests of the estate would be promoted, and that his wife should draw from the earnings of the ships the share which her "*interests*" under the will should bear to the whole net earnings ; *held,* that the use of the word "interests," did not authorize an inference that the testator intended his widow to have another interest in addition to the legacy, *i. e.* a share in the residuary estate.

(*Luce* v. *Dunham,* 7 Hun, 202, reversed.)

(Argued February 7, 1877; decided March 20, 1877.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department affirming a decree of the surrogate of the county of New York upon the final accounting of the executor of the will of Thomas Dunham, deceased.  (Reported below, 7 Hun, 202.)

The portion of the decree appealed from was that providing for the distribution of the testator's residuary estate.

The will was executed February 27th, 1868; the testator died March 1st, 1868.  The testator devised and bequeathed to his wife, the homestead and all the personal property therein, also a legacy of $100,000.  He gave to a sister a legacy of $10,000, and to three half sisters $5,000 each. The sixth and seventh clauses of his will were as follows:

" Sixth.  All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise and bequeath, and do desire and will that the same shall be divided among my heirs and next of kin in the same manner as it would be by the laws of the State of New York had I died intestate.

" Seventh.  It is my desire, and I do hereby order and direct that my executor and executrix hereinafter named, or such of them as shall act for the time, shall not be compelled to

sell and dispose of any part of my interest in ships and vessels, nor be compelled to convert any part of my property into money, nor pay off any part of the legacy or legacies hereinbefore bequeathed until, in their judgment and discretion, the best interests of my estate shall be promoted by so doing; it being my desire, and I do hereby authorize my said executor and executrix to use, control and manage and employ my ships and vessels in a way which shall, in their judgment and discretion, best serve the interests of my estate, and that shall not be held responsible for any losses which may occur in the management of said property, except such as shall happen from their gross negligence or wilful misfeasance; my said beloved wife to draw from the earnings of such ships and vessels the share or portion which her interests under this my last will and testament shall bear to the whole net earnings."

The testator left his widow and the sisters named in the will, him surviving; he left no children. The only real estate owned by him was that devised to his widow. His personal estate was of the value of about $250,000, consisting mostly of ships and vessels.

The surrogate decided that the widow was entitled, under the residuary clause of the will, to participate in the distribution of the residuary estate the same as if the testator died intestate, i. e., that she was entitled to a moiety and to $2,000 in addition.

Sarah H. Luce, one of the half-sisters, alone appealed to this court.

*S. P. Nash*, for the appellant. A widow is not next of kin of her deceased husband. (2 Bl. Com., 202; *Drake* v. *Gilmore*, 52 N. Y., 389.) The statute of distribution does not change the common law rule as to who are of kin to the deceased. (*Withy* v. *Mangles*, 10 Cl. & F., 215; *Slosson* v. *Lynch*, 43 Barb., 147; *Davies* v. *Bailey*, 1 Ves., 84; *Garrick* v. *Ld. Camden*, 14 id., 372; *Cholmondeley* v. *Ld. Ashburn*, 6 Beav., 86; *Hamlin* v. *Osgood*, 5 N. Y. Surr. R. [1

Redf.], 409, 417; *Jones* v. *Oliver*, 3 Ired. Eq. [N. C.], 362; 2 Wms. on Ex'rs, 1005 [6th Am. ed. of 1859], 1119; 7th Eng. ed. [2 Redf.], 75–7.) The word "heirs" as used by the testator did not include the widow. (*De Beauvoir* v. *De Beauvoir*, 3 H. of L. Cas., 524; *In re Porter's Trust.*, 4 K. & J., 188; *In re Steven's Trust.*, L. R. [15 Eq.], 110; *Cushman* v. *Horton*, 59 N. Y., 149, 151–2; *Mounsey* v. *Blaniere*, 4 Russ., 384; 2 Wms. on Exrs., 1109 [7th Lond. ed.]; 2 Jarm. on Wills, Ch., 29, 30.)

*James Thomson*, for the respondents. As the residuary estate consists of personal property, the word "heirs" includes the widow. (*Doody* v. *Higgins*, 2 K. &. J., 729; *Gittings* v. *McDermott*, 2 My. & K., 69; *Low* v. *Smith*, 2 Jur. N. S., 344; *In re Stevens' Trust.*, L. R. [Eq. Cas.], 15, 110; *In re Porter's Trust.*, 4 K. & J., 188; *In re Gamboa's Trust.*, id., 756; *In re Newton's Trust*, 6 L. R. [4 Eq.], 171; *Jacobs* v. *Jacobs*, 16 Beav., 557; *Lowndes* v. *Stone*, 4 Ves. Jr., 649; *Holloway* v. *Holloway*, 5 id., 394; *Vaux* v. *Anderson*, 1 J. & W., 388; *Evans* v. *Salt*, 6 Beav., 266; *Mounsey* v. *Blaniere*, 4 Russ., 384; *Croom* v. *Herring*, 4 Hawk. [N. C.], 393; *Ricks* v. *Williams*,, 1 Dev. [Eq.] 10; *Eddings* v. *Long*, 10 Ala., 203; *Mace* v. *Cushman*, 45 Me., 260; *Houghton* v. *Kendall*, 7 Al., 72; *Sweet* v. *Dalton*, 109 Mass., 589; *Morton* v. *Barrett*, 22 Me., 257, 264; *Chews' Appeal*, 37 Penn., 23; *Cushman* v. *Norton*, 1 Hun, 602; *Wright* v. *Trustees*, etc., 1 Hoff. Ch., 212.) If the word "heirs" had been omitted, the words "next of kin" would include the widow, if the general scope of the will indicated the intention of the testator to include her. (*Withey* v. *Mangles*, 4 Beav., 358; 10 Cl. & F., 215; *Elmsley* v. *Young*, 2 Myl. & K., 780; *Slosson* v. *Lynch*, 43 Barb., 147; *Garrick* v. *Camden*, 14 Ves., 372–7.)

Rapallo, J. It is a cardinal rule in the construction of wills, that a testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it

appears that he has used them in a different sense; in which case the sense in which he thus appears to have used them will be the sense in which they are to be construed.

This rule is so well settled and so elementary, that V. C. Wigram in his work on wills lays it down as the first of the seven rules applicable to the exposition of wills which he has formulated, as the results both of principle and authority. (Wigram on Wills, §§ 12-21.)

It is equally well established that the words "next of kin," in their strict and primary sense, do not include the widow, and it has accordingly been held that where a residue of personal property is directed to be divided among the testator's "next of kin," or among "his next of kin according to the statute," or among his "next of kin as if he had died intestate," or where a trust was created for the benefit of those who, at the decease of a party, should be entitled to his personal estate, as his next of kin, according to the statutes for the distribution of personal estate of persons dying intestate, the widow takes no part. (*Garrick* v. *Lord Camden*, 14 Ves., 372; *Cholmondeley* v. *Lord Ashburton*, 6 Beav., 86; *Hamlin* v. *Osgood*, 5 N. Y. Surr. R. [1 Redf.], 409–417; *Slosson* v. *Lynch*, 43 Barb., 147; *Murdock* v. *Ward*, 67 N. Y., 387, and cases cited.)

In the last mentioned case, some appropriate observations were made, to the effect that the context of the will confirmed the view that the testator used the words "next of kin," in their strict legal sense. But it is not to be inferred from those remarks that the court deemed that such confirmation was required, or intended to depart from the rule that the words must be construed in their strict sense, unless a contrary intent appeared from the context.

The language of the bequest under which the widow claims, in the present case, is as follows:

"Sixth. All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise, and bequeath, and do desire and will that the same shall be divided among my heirs and

next of kin, in the same manner as it would be by the laws of the State of New York, had I died intestate."

The will was dated February 27, 1868, and the testator died on the first of March, following. He left next of kin, consisting of four sisters, viz : Cordelia Dunham, being of the full blood, and Sarah H. Luce, Georgiana M. Crowell, and Charlotte C. Jernegan, of the half blood. He bequeathed to his wife, Mrs. Mary Dunham, one hundred thousand dollars, and his real estate, situated in Tisbury, Massachusetts ; to his sister, Cordelia Dunham, ten thousand dollars, and to his three sisters of the half blood, five thousand dollars each.

At the date of the will and at the time of his decease, he owned no real estate except that devised to his wife; his personal estate, which consisted mainly of ships and vessels, was of the value of about $250,000.

It was urged before the surrogate, and is strenuously contended on this appeal, that as the residuary estate consisted of personalty, the use of the word "heirs" showed an intention to include the widow, and numerous cases are cited in support of the proposition that where the word "heirs" is used, as relating to personal property, it includes all persons who would in case of intestacy be entitled to succeed to or participate in the distribution of the property, and these will not be confined to the next of kin, but include the widow.

Without following out this line of argument it is sufficient for the purposes of the present case to say that, in our judgment, the word "heirs" was not in the residuary clause used with reference to the personal estate which the testator might leave, but was used in its appropriate sense as relating to real estate, should he leave any, and the words "next of kin" were appropriately used with reference to the personal property. The devise and bequest are of "all the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated." Where such a disposition is followed by the words "devise and bequeath," and a direction that the property be divided

among the testator's heirs and next of kin, according to law, as in case of intestacy, there can be no inference that the testator intended to use the words "*heirs*" and "next of kin" in any other than their legal sense. The language is perfectly appropriate and technically accurate, and the meaning of the draughtsman is plain. The word "heirs" relates to the realty devised, and the words "next of kin" relate to the personalty bequeathed, and there is no ground for misapplying these expressions. If the clause did not mention real estate, but bequeathed personal property to heirs or heirs and next of kin, or if it gave real and personal estate to heirs, without mentioning next of kin, the question of the intention of the testator might arise, but here there is no obscurity in the language used, and the subjects of the devise and bequests are such that the technical terms used are accurately applicable to them distributively. In such a case they cannot be construed in any other than their strict and primary sense.

The extraneous fact is relied upon that at the time of making the will the testator owned no real estate other than that specifically devised. Omitting, as unnecessary, the discussion of the question whether such evidence was admissible under the circumstances for the purpose of showing that the testator intended that the word "heirs" should be applicable to the personalty, it is very evident that it does not show such an intent.

The clear meaning of the language of the residuary clause is that the testator devised any real estate which he might leave, to his heirs, and bequeathed his personalty to his next of kin. The fact that, at the time of making the will, he had no real estate to devise, and that it was not probable that he would acquire any, does not show that he intended to bequeath his personal estate to his heirs. It only shows that he left nothing upon which the devise of realty could operate. The devise was not insensible, for it disposed of any real estate which he might acquire after the making of the will; and, although he died two days afterwards, it does not

appear that when he made the will it was a legal impossibility that he might, by inheritance or otherwise, acquire land before he should die. Such a formal provision, although, perhaps, practically useless, affords no ground for construing any other part of the will contrary to its plain legal import.

The learned surrogate, in his able opinion, rejected the argument based upon the use of the word " heirs," but held, in substance, that the language, not being simply that the personalty be distributed among the testator's next of kin, but being that it should be distributed among his next of kin " in the same manner as it would be by the laws of the State of New York, had I died intestate," these latter expressions controlled the words " next of kin," and showed that they were intended to embrace all who would be distributees under the statute, and that the will should be construed as though the testator had directed, generally, that his residuary estate be distributed according to the statute as in case of intestacy.

This same position was taken and argued by counsel, with much force, in the case of *Murdock* v. *Ward* (67 N. Y., 387), and it was urged that a distribution could not be made according to the statute without including the widow. Some of the judges, while the case was under consideration in this court, were strongly inclined to maintain the position contended for, but a full examination of the authorities constrained them to abandon it, and it was finally held that where the bequest was to the next of kin, the addition of the words, " according to the statute as in case of intestacy," was not sufficient to enlarge the class of legatees so as to include the widow.

A provision directing generally that on the decease of a testator, his personal property be distributed as provided by statute in case of intestacy, would, of course, entitle the widow to be included in the distribution, though not specially mentioned, but where the distributees are, by the terms of the will, confined to the next of kin of the testator, effect must be given to that restriction, and the reference to the statute,

or to the laws, merely affords the rule of distribution among the next of kin as if there were no widow.

On the appeal from the decision of the surrogate to the General Term, an additional ground not adverted to by him, nor previously referred to here, was taken in support of his decree. This may be separately considered. By the seventh clause of the will, the testator directed that his executors should not be compelled to sell his ships, etc., nor to pay any part of the legacies, until, in their judgment and discretion, the best interests of his estate should be promoted by so doing, but that they should manage such ships in a way which, in their judgment, should best serve the interests of his estate, and that his wife should draw from the earnings of the ships the share which her interests, under the will, should bear to the whole net earnings.

From the use of the word "*interests*," as regulating the share which the testator's widow should draw from the earnings of the ships, one of the learned judges by whom opinions were delivered at General Term draws the inference that the testator intended that she should have more than one interest in the earnings of the ships ; that if nothing but her legacy of $100,000 was invested in them, she would have but one interest, and therefore he must have intended that she should in addition to that interest have a share in the residuary estate bequeathed to his next of kin. Although not void of plausibility, we think that the grounds of this inference are too vague and shadowy to justify the court in departing from the plain legal construction of the preceding dispositions of the will. Furthermore, the term *interests* seems to have been used by the testator in this clause as synonymous with "interest." He provides for not selling his shipping property until the best interests of his estate shall be promoted by so doing, of managing his ships as shall best serve the "interests" of his estate; and if it were proper to be critical in the interpretation of the word "interests" as applicable to the share of the widow in the earnings of the vessels, it is not unreasonable to suppose that he considered that so long

as her legacy of $100,000 remained invested in them she would have a proportionate interest in each and every ship and its earnings. The use of this term *interests* in place of *interest* seems to us to afford too slight a foundation to authorize us to base upon it a construction of the preceding provisions of the will, contrary to the legal import of the terms employed.

The only appellant to this court being Sarah H. Luce, the decree of the surrogate, and the judgment of the Supreme Court, must be reversed as to her in so far as they adjudge the widow of the testator to be entitled to participate in the residuary estate of the testator, and the decree of the surrogate must be so modified as to award to this appellant the one-fourth part of such residuary estate, free from all claim of the widow. The question being one upon which doubt might well be entertained, the costs of both parties in this court should be paid out of the share of the residuary estate payable to the appellant. In other respects the judgment and decree will of course stand.

All concur.

Judgment accordingly.