MARY C. KETELTAS, Appellant, v. EUGENE M. KETELTAS et al., Executors, etc., Respondents.

The will of K. directed that his residuary estate should be divided among his "next of kin according to the statute of the State of New York concerning the distribution of personal estates of intestates." At the time of making the will the testator had no wife, but married subsequently; *held*, that as there was nothing in the context to show a different intent, the ordinary meaning was to be given to the words "next of kin."—*i. e.*, relatives in blood, and that they did not include the testator's widow.

(Argued January 21, 1878; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment entered upon a decision of the court on trial at Special Term.

This action was brought for a construction of the will of William A. Keteltas, deceased.

The facts appear sufficiently in the opinion.

*C. Bainbridge Smith,* for appellant. The words "next of kin," as used in the will, were to be construed as including the testator's widow. (2 R. S., 92, § 52; 2 R. S., 93, § 75; 2 R. S., Banks [6th ed.], 100, § 90; *Bibby* v. *Myer,* 10 Paige, 220, 222; *Knickerbacker* v. *Seymour,* 46 Barb., 198; Wigram on Wells [O'Hara, 1872], 103; *Lytle* v. *Beveridge,* 58 N. Y., 592, 598; *Hay* v. *Earl of Coventry,* 3 T. R., 86; *Brocklebank* v. *Johnson,* 20 Beav., 201, 205; *Lewis* v. *Morris,* 19 Beav., 34; *Jacobs* v. *Jacobs,* 16 id., 557; *Mattison* v. *Tanfield,* 3 id., 131; *In re Ranking's Trust,* L. R., 6 Eq., 601; *Halloway* v. *Radcliff,* 23 Beav., 163; *Downes* v. *Bullock,* 25 id., 54; 9 H. L. C., 1; *Finlason* v. *Tallock,* L. R., 9 Eq., 257; *Cotton* v. *Cotton,* 2 Beav., 67; *Horn* v. *Coleman,* 1 Sm. & Gif., 169; 19 E. L. & Eq., 19; *In re Collin's Trust,* 36 L. T., 437; *Smith* v. *Palmer,* 7 Hare, 225; *Price* v. *Lockley,* 6 Beav., 180; *In re Craver,* 23 id., 333; *Doody* v. *Higgins,* 2 K. & J., 729; 9 Hare Ap., 32; *In re Gamboa,* 4 K. & J., 756; *In re Porter,* id., 188; *Gittings* v. *McDermott,* 2 My. & K., 69; *In re Stevens,* L. R., 15 Eq., 110; *Pattenden* v. *Hobson,* 17 E. L. & Eq., 16; *Croom* v. *Herring,* 4 Hawks [N. C.], 393; *Henderson* v. *Henderson,* 1 Jones, L. R. [N. C.], 221; *Corbell* v. *Corbell,* 1 id. [Eq.], 114; *Whitehead* v. *Lassiler,* 4 id., 79; *Kiser* v. *Kiser,* 2 id., 28; *Freeman* v. *Knight,* 2 Ired. Eq., 72; *Ingraham* v. *Smith,* 1 Head [Tenn.], 411; *Seabrook* v. *Seabrook,* 1 McM. [S. C.], 201; *Evens* v. *Godbold,* 6 Rich. [S. C. Eq.], 26; *Eismar* v. *Poindexter,* Ind. [2 L. R,], 480; *Eddings* v. *Long,* 10 Ala., 303; *Houghten* v. *Kendall,* 89 Mass., 72, 77; *Morton* v. *Barrett,* 22 Me., 257, 264; *Ferguson* v. *Stuart,* 14 Ohio, 140; *Brasher* v. *Marsh,* 15 id. [N. S.], 103; *Cushman* v. *Horton,* 59 N. Y., 149, 151, 152; *Carter* v. *Cranley,* 1 L. Raym., 496; *Milne* v. *Gilbart,* 2 De G., Mac. & G., 715; 19 E. L. & Eq., 228;

27 E. L. & Eq., 344; Walton's Trust, 2 Jur. [N. S.], 363; 35 E. L. & Eq., 589; 1 Wms. on Exrs. [7th Lond. ed.], 418; *Lady Lincoln* v. *Pelham*, 10 Ves., 175; *Cook* v. *Phillips*, 53 N. Y., 314; *Bibby* v. *Myers*, 10 Paige, 220, 222; *Mer. Ins. Co.* v. *Hinman*, 34 Barb., 410; *Garrick* v. *Camden*, 14 Ves., 372.) A will is to be construed to speak from the death of the testator. (*Fox* v. *Phelps*, 17 Wend., 398; 20 id., 437; *Jackson* v. *Billinger*, 18 J. R., 381; *Van Alstyne* v. *Van Alstyne*, 28 N. Y., 375; *Wetmore* v. *Parker*, 52 id., 450, 463; *Gold* v. *Judson*, 21 Conn., 616; *Canfield* v. *Bostwick*, id., 550; *Cole* v. *Scott*, 1 Mac. & Gor., 518.)

*S. P. Nash*, for respondents. The widow of the testator could not be included in the words "next of kin," as used in the will. (*Murdock* v. *Ward*, 8 Hun, 9; *Luce* v. *Dunham*, 7 id., 202; *In re Collin's Trust*, 36 L. T., 437.)

EARL, J. Upwards of two hundred years ago Lord COKE made the observation, which is nearly as true now as it was then, that "wills and the construction of them do more perplex a man than any other learning; and, to make a certain construction of them, this *excedit jurisprudentum artem*." (*Roberts* v. *Roberts*, 2 Bulst., 130.) Since that time the construction of wills has continued to perplex the courts, and not much has been done by the evolution of rules to aid them. Such is the multifarious and complex nature of human affairs, and the uncertainty of language, and such the carelessness and inattention with which wills will frequently be drawn and executed, that the "certain construction" of them will probably be no less difficult in the future than it has been in the past.

The primary object in construing wills is to ascertain the intention of the testator, and when that has been ascertained, it is to be implicitly obeyed, however informal the language in which such intention has been conveyed. But the intention is not matter of speculation or arbitrary conjecture. It is

sought for in the language used; and when language or a certain collocation of words has once received judicial construction, precedents are formed which are followed in later cases. It is a general rule of construction that when a testator uses technical words, he is presumed to employ them in their legal sense, and that words in general are to be taken in their ordinary and grammatical sense unless the context clearly indicates the contrary.

The important words to be construed here are "next of kin." These words ordinarily do not legally include a widow. They mean relatives in blood. (*Murdock* v. *Ward*, 67 N. Y., 387 ; and *Luce* v. *Dunham*, 69 N. Y., 36.) The only inquiry need be, therefore, whether there is anything in the context to show that they were used in any other sense. The testator, at the time he made this will, had next of kin, but no wife, and, so far as we know, he did not contemplate marriage. There were three persons in being answering to the term "next of kin," and if we should consider the circumstances existing at the time of the execution of the will, we should find in them no ground for supposing that the testator contemplated that any widow of his should be included under that term. The testator first gives all his property to his executors in trust, and directs them to set apart and invest the sum of $10,000 for the benefit of each of five persons, and to pay over the income of such sum to each of such persons during life, and at death to pay the principal sum to the children of the person dying; but if no children be left, then the principal sum of each share is to fall into and become part of the residuary estate ; and then, in the ninth clause of the will, he disposes of his residuary estate as follows : "I direct my executors to apportion, divide and pay the rest, residue and remainder of my estate, after providing as above directed, to, between and among my next of kin, according to the statute of the State of New York now in force concerning the distribution of personal estates of intestates, in like manner as though I had died intestate." There is nothing in the other clauses of the will which.

throw any light on this, and the language used in this must therefore be construed by itself. The objects of the testator's bounty in this clause were his next of kin, and there is nothing in the context which shows that he intended to include his widow. That she is therefore excluded, is no longer an open question in this court. In *Murdock* v. *Ward*, the testator, after certain specific legacies, devised and bequeathed the residue of his estate to his executors to sell and convert the same into money, and after paying debts and some other charges, to pay the remainder in equal shares to his children, viz. : to his sons their respective shares at twenty-one, or at such times subsequently, or in such sums from time to time as they should deem desirable or best, and then followed this provision : "And in case the whole of said principal shall not be paid to them, or either of them, during their lives, then the said principal, or such part or portion thereof as may remain unpaid, to be equally divided among and paid to the persons entitled thereto as their or either of their next of kin, according to the laws of the State of New York, and as if the same were personal property, and they or either of them had died intestate." The claim was made there as here, that the widow was included in the term next of kin, and it was held there, after a review of many authorities, that as there was nothing in the context to show that the widow was intended to be included, the words next of kin must have their primary meaning, and include only blood relations. That case was subsequently followed in *Luce* v. *Dunham*, where the residuary estate was disposed of in the following language : " I give, devise, and bequeath, and do desire and will, that the same shall be divided among my heirs and next of kin in the same manner as it would be by the laws of the State of New York had I died intestate." The claim of the widow to share in the personal estate as one of the next of kin was again rejected. In both of the cases cited it was held that the language used in connection with the words "next of kin," relating to the statute of distribution in case of intestacy, did not enlarge the meaning

of these words. We can perceive no material distinction between the language used in those cases and that used in this.

Most of the authorities to which our attention was called by the learned counsel for the appellant upon the argument of this case were examined and considered in those cases, and while some cases and the language of some judges were found which tended to uphold the construction claimed on behalf of the widow, we concluded that the weight of authority and the best reason were opposed to the construction contended for; and the able argument and exhaustive brief made for the widow in this case have not changed our opinion. We believe that the construction we have given to these clauses will, in most cases which may arise, be found to be in harmony with the actual intention of the testator. According, not only to the legal meaning, but to common understanding, the words next of kin mean blood relations only, and when a testator intends to provide for his own widow, or the widow of a blood relation, it will generally occur to him to use language more appropriate to designate her.

The judgment must therefore be affirmed, with costs.

All concur.

Judgment affirmed.