Jorra P. Kingsford, Referee.
This is an action which is brought by the plaintiff, as trustee under the will of Frances Hendricks, of the share of her daughter, Selina Hendricks, now deceased, for an accounting of their trust and directions as to distribution of her estate among the persons entitled thereto under the said will.
Frances Hendricks died in the year 1854, leaving eight children, all of whom, with the exception of one, Selina. Hendricks, have had children, and in one case the claimants of a portion of the estate are great-grandchildren and great-great-grandchildren of Frances Hendricks. The claim of these great-grandchildren and great-great-grandchildren to a portion of the trust estate, raises the principal question at. issue in this action.
' The original will of Frances Hendricks was executed on June 15, 1841, and a codicil was added thereto on , July 27,, 1852, and so far as it needs to be considered in this action, is as follows : All of the testatrix’s estate was first directed to be converted into personalty, and then all of her estate, after the payment of just debts, etc., is divided into eight portions, and each one of these portions was left in trust to apply the income therefrom to one of her children. The provisions with regard to each of the eight portions or shares are identical, and quoting from the clause referring to Selina Hendricks, one-eiglit part of her estate is to be held upon trust to invest, etc., and apply the income “ unto the use of iny daughter Selina, for and during her natural life,” and “ upon the decease of my said daughter Selina, I thereupon give and bequeath the said last mentioned one equal eighth part of the said residue of my estate and the securities wherein the same shall then be invested, unto the child or children of my said daughter Selina, living at the time of her decease, and the issue of any deceased child or children of my said daughter Selina, such child or children of my, said daughter Selina and the issue-of any deceased child or children of my said daughter Selina to take, as tenants in common, but so, nevertheless, that the issue of any deceased *395 child or children of my said daughter Selina shall take equally among them the share or shares only which the parent or respective parents of such issue, if living, would have taken at her, my said daughter Selina’s decease, such issue representing the parent. But if my said daughter Selina shall die without leaving a child or children, or the issue of any deceased child or children, then and in such case I give and bequeath that and immediately upon the death of my said daughter Selina, so dying, the said above mentioned one equal eighth part of the said residue of my estate and the securities wherein the same shall be invested unto and amongst my surviving child or children living at the time of the decease of my said daughter Selina and the issue of any deceased child or children, such surviving child or children and the issue of any deceased child or children to take as tenants in common, but so, nevertheless, that the issue of any deceased child or children shall take equally among them the share or shares only which the parent or respective parents of such issue, if living, would have taken at her, my said daughter Selina’s decease, such issue representing the parent.”
Miss Selina Hendricks has recently died, without issue, and that portion of her mother’s estate, together with some accumulated interest in the hands of the trust company, is now to be divided. The first question therefore presented is, are the great-grandchildren and the great-great-grandchildren of Frances Hendricks, entitled to share in this estate ? The second question which has been raised is, is the income in the hands of the trustee, which has accumulated since the last payment by them to Selina Hendricks, to be apportioned as of the date of her death or not.
JFwst. The decision of this question depends upon the construction of the word “issue,” when used in connection, as here, with the word “ parent.” Very few, if any, words in the English language, when used in wills, have given rise to more discussion and uncertainty, than these two words, when it has been sought to control one by the other. The *396 question- raised here has never, as far as I have been able to discover, been decided by this court, or by the court of appeals in this State. Two decisions have been rendered— one by Surrogate Rollins, in the case of Murray v. Bronson (1 Dem. 217), and the other by Surrogate Bradford in Barstow v. Goodwin (2 Bradf. 413), in which cases Surrogate Bradford decided one way and Surrogate Rollins the other, and in neither of these cases was an appeal taken.*
*397 The first and most important consideration is, of course, to carry out the intention of the testatrix, if we can, not by mere conjecture, but by taking her will as a whole, from the language used, and controlling the interpretation of that language by pertinent judicial construction. The primary meaning of the word “ issue ” is, all descendants from the same parent stock ; and the first case analogous to the present that limited the meaning, was the case of Sibley v. Perry (7 Ves. Jr. 522; 1802), decided by Lord Eldon, in which he held that the meaning of the word “ issue,” as used in a clause of a will, was limited so as to include only “ children.”
I do not consider it necessary to go into an elaborate discussion of this question, as presented by the various authorities; they will be found fully collated by Surrogate Rollins, with his usual industry, in Murray v. Bronson. ' This court, it seems to me, need not be trammeled by the difficulty by which the courts in England have been, because of the case of Sibley v. Perry. In 1879, in the ease of Ralph v. Carrick (L. R. 11, Ch. Div. 873), the appellate court in England reversed the decision of the Vice-Chancellor, who had followed the case of Sibley v. Perry, where the word “ descendants ” had been used in connection with the word “ parent,” but the court intimated that would have made no difference if the word 11 issue ” had been used.
*398 James, L. J., says:
“It is, I think, much to be regretted that Sibley v. Perry was ever made a leading case, because, according to the report of what Lord Eldon himself said in the case, it is to my mind perfectly clear thadlhe never intended to lay down any general rule or canon of construction, but was dealing only with the peculiar language of the will in that particular case. He found one clause in which he considered the testator had used the word ‘issue’ to signify children only, and then he said I gave the same meaning to the word ‘ issue ’ in other parts of the will.”
Brett, L. J., says:
“ I think, after the way in which Sibley V- Perry has been spoken of in subsequent decisions, we are not at liberty to say that it does not lay down a general rule, but I think the fate of that general rule will be the fate that usually accompanies a rule which is not liked, viz.: that it will be applied to cases exactly like Sibley v. Perry and to no other, or, in other words, it will be no general rule at a,ll.”
Cotton, L. J., says:
“ Certainly, if Lord Eldon had laid down any general rule of construction which would apply to the present case, I should follow it; but we must remember that general rules of construction are not fetters which prevent the court from giving due weight to any expressions of the testator which tend to take a case out of those rules.”
• Turning to the will of Frances Hendricks, we find that in creating each of the trusts in favor of her eight children she provided that on the death of each of those children such child’s share shall go to the children living at such child’s decease, and the issue of any deceased child or children . . . “ the issue of any deceased child or children to take equally among them the share or shares only which the parent or respective parents of such issue, if living, would have taken.” Precisely the same form of language is used in the provision applying to what remains over in. case of the failure of issue of any child of hers. It seems to me, under the whole scope of this will, that the intention of Frances Hendricks, as it is found therein, is that each of her *399 children should be entitled to the income of one equal share of her estate, and upon each child’s death the issue of that child should be entitled to their parent’s share. Will it be contended that, if Selina Hendricks had married and had children, and those children had descendants who died before the death of Selina Hendricks, so that the only representatives of her line should be great-grandchildren and great-great-grandchildren of Frances Hendricks, she intended that direct representatives of Selina should not take their share of the portion which their grandmother and great-grandmother had been entitled to, but that if such descendants were more remote than children’s children that the share of Selina Hendricks should pass under the trust through her brothers and sisters to their children or grandchildren, and thus Selina’s descendants get none of this share ? Precisely the same words are used in the subsequent portion of the trust, which is now under consideration ; they are, in fact, a mere repetition of the earlier part of the clause, and it certainly seems to me that unless the court is prepared to hold that under this will the great-grandchildren of Selina Hendricks would not have been entitled to any part of her share, that it would not be consistent to follow the case of Sibley v. Perry in this instance and cut off the great-grandchildren and great-great-grandchildren, who would now become entitled to a share of this trust estate. The case of Ross v. Ross (20 Beav. 645 ; 1855) seems to me much nearer the present case than that of Sibley v. Perry, and in Boss v. Boss the master of the rolls declared, upon consideration of the will then under construction, that “ issue ” was not limited to children of the first degree, because the word “ parent ” could properly be held to refer not only to children, but to a grandchild of Christian Boss. “ This,” said the court, “ is the only way in which the various parts of the will can be made consistent.” He stated, “ the first rule is this: that the word- ‘ issue ’ includes all remote descendants of the person whose issue is spoken of, and the burden of *400 proof lies upon him who contends that it is to be restricted to a narrower signification.
Michael H. Cardozo [Billings & Gardozo, attorneys), for the great-grandchildren and great-great-grandchildren.
I am of opinion that Frances Hendricks by her will had no intention of restricting the beneficiaries thereunder to> grandchildren, and therefore that the great-grandchildren,, and great-great-grandchildren of Frances Hendricks, where their parents are dead, are entitled to share in this, estate.
Second. The question has been raised before me that, the income of the estate collected since, but accruing before, the death of Selina Hendricks, belongs to the principal, and that her executors have no claim to any part of such income. Selina Hendricks died March 20, 1888; since her death, income amounting to about twenty-five hundred dollars has been collected by the' plaintiff. • This income, as-testified to before me, is derived from bonds and mortgages, Hnited States, State and City bonds; none of it from real estate. The act of 1875 does not apply to this ease, it being limited by its terms to wills, which took effect subsequent to' its passage. .
I am of opinion, however, that the income received by the trustee should be apportioned as of the date of Selina Hendrick’s death, and that her executors are entitled to such portion as accrued up to that time. In 2 Perry on Trusts (3rd ed.) 108, it is laid down that “ interest upon notes, bonds, mortgages and similar securities accrues from day today, although it is not payable until a fixed date. It is, therefore, apportionable, and trustees must pay the proportion accruing during the life of the tenant for life to his-representatives.” (See also Williams on Executors, 837; Banner v. Lowe, 13 Vesey, 135.)
Motion to confirm the report.
I. The great-grandchildren and great-great-grandchildren of the testatrix are entitled to their respective portions of the share of the estate of the testatrix of which Selina Hendricks was the beneficiary during her life (Barstow v. Goodwin, 2 Beav. 413, 418; Ralph v. Carrick, L. R. 11 Ch. Div. 873, 885; Low v. Harmony, 72 N. Y. 408, 414; Scott v. Guernsey, 48 Id. 106; Matter of Brown, 29 Hun, 412; aff’d 93 N. Y. 295; Leigh v. Norbury, 3 Ves. Jr. Ch. 340 v. Ross v. Ross, 20 Beav. 645; Re Kavanagh’s Will, 13 Irish, Ch. R. 120; Davenport v. Hanbury, 3 Ves. 257; Freeman v. Parsley, 3 Id. 421; Oddie v. Woodford, 3 My. & Cr. 584; Bernal v. Bernal, Id. 559; Horsepool v. Watson, 3 Ves. Jr. 383; Farrant v. Nichols, 9 Beav. 327; Edwards v. Edwards, 12 Id. 97; Swift v. Swift, 8 Simon, 168; Goldie v. Greaves, 14 Id. 348; Sibley v. Perry, 7 Ves. Jr. 522; Pruen v. Osborn, 11 Sim. 132; Scott v. Scott, 11 Irish Ch. R. 115, 119; Murray v. Bronson, 1 Dem. 217; Prowitt v. Rodman, 37 N. Y. 42.
II. The intention of the testatrix, derived from a reading of the will in its entirety, is the controlling guide for its interpretation (Inglis v. Trustees of Sailor’s Snug Harbor 3 Peters, 99, 145; Patch v. White, 117 U. S. 210, 219; Finlay v. King’s Lessee, 3 Pet. 346, 377; Keteltas v. Keteltas, 72 N. Y. 312, 314).
III. Words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject (Ridgeway v. Munkittrick, 1 Drury & Warren, 84).
Edgar J. Nathan, for the defendant Gomez, and other defendants.
I. The intention of the testatrix is to be-derived from the language of the will; and in seeking such-intention her words are to receive that construction and; interpretation which a long series of decisions have attached' to them (Corrigan v. Kiernan, 1 Bradf. 208; Brown v. Lyon, 6 N. Y. 419; Palmer v. Horn, 84 Id. 516; Earl of: Orford v. Churchill, 3 Ves. & B. 59, 69; Keteltas v. Keteltas, 72 N. Y. 312; Murray v. Bronson, 1 Dem. 217, 231).
II. The primary meaning of words used by the testatrix is to be given to them, unless the context indicates and requires another (Palmer v. Horn, 84 N. Y. 516; Taft v. Taft, 3 Dem. 86).
III. The word “issue” in connection with the word “ parent,” is clearly limited in its meaning to children (Wythe v. Thurlston, Ambl. 555; Cook v. Cook, 2 Vernon, 545 ; Leigh v. Norbury, 13 Ves. Jr. 340; Sibley v. Perry, 7 Id. 522; Doe d. Cannon v. Rucastle, 8 C. B. 876, 880; Slater v. Dangerfield, 15 M. & W. 263; Lees v. Mosley, 1 Y. & C. 589; Peel v. Catlow, 9 Sim. 372; Pruen v. Osborn, 11 Id. 132; Hedges v. Harpur, 9 Beav. 479; Farrant v. Nichols, 9 Id. 327; Edwards v. Edwards, 12 Id. 97; Bradshaw v. Melling, 19 Id. 417; Ross v. Ross, 20 Id. 645; Smith v. Horsfall, 25 Id. 628; Maynard v. Wright, 26 Id. 285; Rhodes v. Rhodes, 27 Id. 413, 417; Stevenson v. Abingdon, 31 Id. 305, 307; Lanphier v. Buck, 11 Jur. N. S. 387; McGregor v. McGregor, 1 DeG. F. & J. 63; Martin v. Holgate, L. R. 1 H. L. 175; King v. Savage, 121 Mass. 303; Hill v. Hill, 74 Penn. St. 173; Burleson v. Bowman, 1 Rich. Eq. (S. C.), 111; McPherson v. Snowden, 19 Md. 197; Murray v. Bronson, 1 Dem. 217; Ralph v. Carrick, L. R. 11 Ch. Div. 873; Barstow v. Goodwin, 2 Bradf. 413),
IV. There is no room for the argument that where there is a total want of persons who properly answer the description, other persons who do not so completely answer it, may be let in to take in their stead (Earl of Orford v. Churchill, 3 Ves. & B. 59, 69; Prowitt v. Rodman, 37 N. Y. 42; Low v. Harmony, 72 Id. 408; Scott v. Guernsey, 48 Id. 106; Murray v. Bronson, 1 Dem. 217).
Patterson, J.
The only question argued upon the motion relates to the right of the great-grandchildren and great-2:reat-a:randchildrcu of the testatrix to share in that ^portion of the estate enjoyed by Selina Hendricks during *403 her life under the will. I cannot perceive that anything can be added to the arguments made at the bar on the motion to confirm the report of the referee, particularly after the admirable presentation of the case made by the counsel opposing the report, whose brief I have read with great interest.
It seems to be conceded that the whole case turns upon Sibley v. Perry (7 Ves. Jr. 522) being a controlling authority. There is nothing decided in the courts of this State which should make it so, nor do I perceive anything which entitles it to be regarded as such in this country, whatever may be the views of the English judges as to its having established a general rule of construction binding upon them. The word “issue” in its legal sense is broad enough to cover descendants, and this is not denied by any respectable authority. Lord Eldoh", in the case cited, while recognizing this view, considered that in the particular case it should be limited; but I can discover nothing in the will before me which would justify an assumption that it was the intention of the testatrix to confine her bounty to her children and grandchildren ; what she meant, as I conceive, was to provide for her children, and after the expiration of their particular estates, to extend her bounty to those who were her descendants in being at that time in whatever degree they might be.
Upon the whole case I am not inclined to differ with the conclusions at which the referee has arrived.
The report is confirmed.

 The rulings in these two cases upon this question are as follows:
Barstow v. Goodwin, 2 Bradf. 418.
In case of a devise to brothers and sisters surviving at the testator’s decease and the descendants of such as should then be dead, such descendants to take the share or portion which would have otherwise belonged “to such deceased parent,”—-at the testator’s death, there were four surviving sisters—and descendants,-children and grandchildren of six deceased brothers and sisters. Held, that the four sisters each took one-tenth, and the descendants of each deceased brother and sister took one-tenth.
The term descendants properly includes every person descended from the stock referred to. A devise to descendants, equally to be divided between them, embraces all the descendants of every degree, per capita.
Whether descendants are to take per capita or per stirpes is however, a question of intention, to be judged of by the will: A devise
to descendants of the share of their deceased parent, in connection with other portions of the will tending to show that the testator looked to the principle of representation, may restrain the import of the term descendants to children and the descendants of children, so that they take per stirpes and not per capita.
Murray ■». Bronson, 1 Bern. 217.
The word “issue,” in a will, when used in correlation to “parent,” in the absence of manifest indications that it is intended to have a broader import, means “children,” and excludes remoter descendants.
■ Testator, who died in 1888, by his will, executed in 1829, gave all his estate, with certain exceptions, upon specified trusts, to trustees, directing that the same be divided equally among all his surviving children, and the issue of such as may be dead, “ who are to take what the parent of such issue would be entitled to, if living.” He further provided that the principal of each daughter’s share should remain in possession of the trustees, she receiving the income during *397 life, and that, on the death of any daughter without issue, her portion should thereupon belong to his “ other children and their issue, subject to the restrictions and regulations aforesaid.” M., a daughter, and the last surviving child of the testator, died, leaving no child or other descendant, but (1) nieces and nephews, testator’s grandchildren, and (2) children of nieces and nephews who had died during her lifetime, testator’s great-grandchildren.
Held, that on M.’s death, the corpus of her trust portion was distributable per stirpes, exclusively among the grandchildren of testator, the great-grandchildren, children of deceased grandchildren not being included among the “ issue ” of testator’s children, within the intent of his will. [Palmer r. Horn, 84 N. Y. 516, distinguished.]